## LEWIS v. COLUMBIA MUT. LIFE INS. CO.

No. 5983.

Court of Appeal of Louisiana. Second Circuit.

May 3, 1940.

Rehearing Denied June 10, 1940.

Writ of Certiorari and Review Denied July 18, 1940.

W. T. Holloway, of Jonesboro, for appellant.

H. W. Ayres, of Jonesboro, for appellee.

DREW, Judge.

Plaintiff alleged that the Columbia Mutual Life Insurance Company, organized under the laws of Mississippi and domiciled at Memphis, Tennessee, and authorized and doing business in Louisiana, is indebted unto him in the sum of $936.45, plus 5% per annum interest from judicial demand and all costs of this suit. That there was issued to him a policy or certificate of insurance on his life by the Eminent Household of Columbian Woodmen, a fraternal insurance organization, existing under the laws of Georgia and

authorized to do business in Louisiana. That the policy was issued on March 6, 1920, for the amount of $3,000 and his wife, Jessie Mead Lewis, was designated as beneficiary; and that he has paid all premiums, fees and assessments and that the policy is in full force and effect.

Plaintiff further alleged that the Columbia Mutual Life Insurance `Company has assumed all the liabilities and obligations of the said fraternal Tennessee organization issuing said policy and, since the date of assumption by defendant, it has mailed out all notices of dues, premiums and assessments and has collected them since that date and that the fraternal order has not operated for over fifteen years.

Plaintiff further shows that all premiums, dues and assessments have been paid by him for more than 17 years, 10 months and 21 days, and that under the contract he is entitled to a cash surrender of the amount sued for, in accordance with the table in said policy.

Plaintiff further alleged that he has offered to surrender his policy and has demanded a cash surrender settlement, and that defendant has refused to make said settlement. He prayed for service and citation and for judgment.

Several exceptions to the petition were filed and tried. They are not urged here. Therefore, we will not concern ourselves with them.

Defendant in answer admits it was organized under the laws of Mississippi and has a place of business in Memphis, Tennessee. It admits that the Eminent Household of Columbian Woodmen, a Georgia fraternal benefit association, issued a covenant to plaintiff, and alleged as follows:

"4. The Eminent Household of Columbian Woodmen, was a fraternal benefit society, incorporated under the laws of Georgia. In the year 1921, the Eminent Household of Columbian Woodmen, a fraternal benefit society, was merged and consolidated with Columbian Woodmen, a fraternal benefit society, incorporated under the laws of the State of Mississippi. After this merger and consolidation, the Eminent Household of Columbian Woodmen ceased to exist. Harvey F. Lewis was a member of the Eminent Household of Columbian Woodmen and, as a result of this merger and consolidation, became a member of the Columbian Woodmen, the Mississippi fraternal benefit society. During the year 1921, the State of Mississippi granted an amendment to the charter of Columbian Woodmen, making certain changes in its organization and changing its name to Columbian Mutual Life Assurance Society. In the year 1926, said Columbian Mutual Life Assurance Society, under the laws of the State of Mississippi, secured an amendment to its charter, under which it was authorized to operate as a mutual life and disability insurance company. After securing said amendment to its charter, the Columbian Mutual Life Insurance Company discontinued operating as a fraternal benefit society, insofar as securing additional members, but it continued to be obligated to carry out the certificates or covenants of the insurance issued and outstanding in the name of Eminent Household of Columbian Woodmen, Columbian Woodmen or Columbian Mutual Life Assurance Society, in accordance with the provisions thereof and subject to all the conditions thereof. The relation that existed between Columbian Mutual Life Insurance Company and the holders of covenants of insurance issued by said fraternal benefit societies was based upon certain covenants of insurance, as well as the applications made for said covenants, the laws of the states of Mississippi and Louisiana and the Constitution and By-laws of said society, as existing or legally amended."

It admits that plaintiff paid certain contributions referred to as premiums but not over the period of time alleged and that plaintiff offered to surrender the certificate or covenant, but same was not accepted for the reason there was no cash surrender value on said policy in any amount.

Further answering, defendant shows:

"That while, under the amendment to its charter, defendant discontinued issuing covenants of insurance as to a fraternal benefit society, that as to such covenants of insurance as were previously in existence, including the covenants of insurance held by Harvey F. Lewis, the relation of defendant to said Harvey F. Lewis remained unchanged, and said covenant of insurance issued in the name of Eminent Household of Columbian Woodmen to Harvey F. Lewis continued in effect between said Harvey F. Lewis and defendant, in accordance with all of its terms, provisions and conditions, as set forth in the covenant of insurance, the application therefor, the laws of the states of Mississippi and Louisiana, and the Constitution and By-Laws of said Society, as previously existing or as

amended, and both said Harvey F. Lewis and this defendant were bound by all of said terms, provisions and conditions.

"That on March. 16, 1937, an assessment was duly levied by the officers of said company against the covenant of insurance held by the said Harvey F. Lewis, the amount of said levy being the sum of $918.-69, bearing 5% per annum interest, compound, thereon from March 16, 1937, until paid; that said assessment has not been paid by the said plaintiff and the same is now due and unpaid.

"That immediately on said assessment having been levied, plaintiff was notified thereof and on plaintiff's offer to surrender said covenant for the cash surrender value thereof, plaintiff was again notified of said levy and the amount thereof in the sum of $918.69, plus interest, as aforesaid, which was equal to the cash surrender value or loan value of the covenant and at all of said times and now there was no cash or loan value left in said covenant and that for the reasons hereinabove and as will be hereinafter set forth, the said plaintiff is not entitled to have any sum paid to him as the cash surrender value of said covenant of insurance or any other sum whatsoever.

"That as aforesaid, the Eminent Household of Columbian Woodmen was a Georgia fraternal benefit society, incorporated under the laws of said state; that the said Georgia society was merged in 1921 with the Columbian Woodmen, a fraternal benefit society incorporated under the laws of the State of Mississippi, after which the Georgia fraternal benefit society ceased to exist. Whereupon, plaintiff became a member of the Mississippi fraternal benefit society which, by amendment of charter in 1921, became the Columbian Mutual Life Assurance · Society and that therefore the said covenant, having been issued in the State of Louisiana and under and by virtue of the fraternal benefit society laws thereof by a Georgia fraternal benefit society, subject to the laws of said state and under authority and by virtue of the rights, privileges, conditions and stipulations as set forth in its charter, and continued with the Mississippi fraternal benefit society, as hereinabove set forth, subject to and in accordance with the fraternal benefit society laws of said state and subject to and under the terms and provisions of the laws of said state of Louisiana, and subject to and under the terms and pro-

visions of the constitution and by-laws of said society and the application of said plaintiff for said covenant, defendant now shows that among others, the pertinent provisions of the said laws of the said states and of the by-laws, constitution and application to be as hereinafter set forth.

"One of the provisions of the law of Mississippi, found in the Acts of 1916, c. 206, and in the Code of Mississippi of 1930, at Section 5237, provides: 'Every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter or articles of incorporation, or, if a voluntary association, the articles of association, constitution and laws of the society and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member, and copies of the same, certified by the secretary of the society or corresponding officer, shall be received in evidence of the terms and conditions thereof, and any changes, additions or amendments to said charter or articles of incorporation, or articles of association, if a voluntary association, constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate shall bind the member, and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership.'

"While said section is the law of the State of Mississippi, it is substantially the same as Code Section 56-1610, of the Code of Georgia and Dart's Statutes of Louisiana, Section 4142 (Laws 1912, No. 256, § 8).

"Defendant shows that another provision of the fraternal benefit society law of the State of Mississippi, being a part of the Acts of Mississippi, enacted in 1916, Laws 1916, and substantially incorporated in the Mississippi Code of 1930, is Section 5252, as follows: 'The laws of such society shall provide that if the stated periodical contributions of the members are insufficient to pay all matured death and disability claims in full, and to provide for the creation and maintenance of the funds required by its laws, additional increased or extra rates of contribution shall be collected from the members to meet such deficiency; and that such laws may provide

that, upon the written application or consent of the member, his certifictae may be charged with its proportion of any deficiency disclosed by valuation, with interest not exceeding 5% per annum.'

"Defendant shows that substantially the same provision is found in the fraternal benefit society laws of the State of Georgia as contained in the last statement of Code Section 56-1626, and Dart's Louisiana Statutes, Section 4157, page 1578 (Act No. 287, of 1914, § 3).

"Defendant shows that in the application made by the said Harvey F. Lewis, plaintiff, for the covenant of insurance issued to him it was expressly provided that the constitution and laws of the society then in force or which might thereafter legally be adopted, should constitute the basis of and form a part of any beneficiary covenant, whether printed or referred to therein or not. Defendant shows that in the face of the covenant issued to said Harvey F. Lewis there is contained the following express provision: 'This covenant is issued by the Eminent Household of Columbian Woodmen, hereinafter referred to as the society, to Worthy Guest, Harvey Fleming Lewis, hereinafter referred to as the assured, of Jonesboro, Louisiana, Jonesboro Household No. 241, and the Eminent Household of Columbian Woodmen, in consideration of the application of the assured and the warranties therein contained, and of compliance on the part of the assured with the constitution and by-laws of this society, now existing or as hereafter legally amended, hereby promises and binds itself to pay to Jessie Mead Lewis, beneficiary, related to the assured as wife, upon satisfactory proof of death of said assured while this covenant is in force, the sum of $3000.00, less any indebtedness chargeable against this covenant, subject to the provisions of its constitution and laws and to the conditions set forth on the following pages hereof, all of which form a part of this covenant.'

"Defendant further shows that paragraph 26 of said provisions of said covenant is as follows: 'The Eminent Household of Columbian Woodmen is incorporated as a fraternal beneficiary society under the laws of the state of Georgia, and no officer or representative thereof, or of any subordinate body thereof has any right or power, by any statement, agreement, promise or manner of transacting business, to waive the conditions, provisions or requirements of the contract between the assured and the society, or of the laws, rules and regulations of the society; and full compliance therewith on the part of the assured is a condition precedent to any liability of the society thereunder. All conditions and privileges of this covenant are qualified by the consideration under which this covenant was issued and the constitution of the society.'

"Defendant further shows that under the by-laws of the Columbian Mutual Life Assurance Society, as they existed, the power of the management of said society was placed in the National Council. Among its powers was that of providing for the levy and collection of such premiums or installments and dues from its members as shall be necessary to pay all beneficiary claims and expenses of management, and to provide the required reserve and a reasonable surplus for that purpose and to have generally such powers and perform such duties as it may deem wise for the welfare of the society and to establish the rights and perpetuity of the society without limitation within the scope of its rights and powers conferred by its articles of incorporation and charter. It was further provided that the National Council as the representative body of the entire society, shall have plenary power to act in all things in the name and in behalf of the society, subject only to the limitations imposed by law and by the constitution of the society.

"Defendant shows that under the provisions of the laws of Mississippi, as well as Louisiana, and under the constitution and by-laws of the Eminent Household of Columbian Woodmen and the Columbian Mutual Life Assurance Society, and under the applications and covenants issued as a result of said applications, all members of the society have been liable to additional, increased or extra rates of contribution at any time that the authorities of said society decided that it was necessary to take such a course in order to pay all beneficiary claims and expenses of management and to provide the required reserve and a reasonable surplus for that purpose and for any other reason deemed wise, for the welfare of the society.

"As heretofore set forth, under the authority of the law of Mississippi, it was decided to convert said society into a mutual life and disability company. The law of Mississippi as set forth in the Acts of

1924, beginning on page 270, provides among other things, as follows:

" 'Sec. 2. Any fraternal benefit society organized under the laws of this state may be converted into a mutual life, or mutual life and disability insurance company, so as to come within the provisions of, and operate under said chapter 157, laws of 1918, and amendments thereto, upon the terms and conditions as follows:

" 'Whenever the supreme governing legislative body of any fraternal benefit society incorporated under the laws of this state shall, by two-thirds vote, determine that a change or conversion from a fraternal benefit society to a regular mutual life or disability insurance company shall be to the best interests of the society and its members, or whenever a majority of the members in good standing of any such domestic fraternal benefit society shall, in writing, signify their desire for such conversion, then, in either event, said fraternal benefit society may adopt and file with the insurance commissioner of Mississippi an amendment to its articles of incorporation, authorizing it to be converted from a fraternal to a domestic mutual life or disability insurance company, and said amendment shall become operative upon its approval by and filing with the insurance commissioner, unless a later time be provided in said amendment. If the amendment is approved by the insurance commissioner, he shall issue his certificate of approval in writing, and thereafter the company shall have legal existence as a domestic mutual life or disability insurance company and may reorganize by the election of a board of directors and the adoption of by-laws, and proceed to transact the business of such company in accordance with, and be subject to all of the terms and provisions of said chapter 157 of the laws of 1918, and amendments thereto.

" 'Provided, however, that no such conversion from a fraternal benefit society to a regular mutual life or disability insurance company shall be had unless written notice of such proposed change be deposited in the United States mail, registered, and postage prepaid to each member of such fraternal benefit society, at his last known post office address, at least 90 days before the proposed change or conversion is to be acted upon by said supreme governing body: but the notice provided herein shall not apply to or be required of any fraternal benefit society whose district councils, or state or division grand lodges, composed of delegates from branch councils or subordinate lodges, have by a two-thirds vote, already authorized or instructed its national council, or supreme legislative governing body, to change or convert their society into said mutual life and disability company at the time this act becomes effective.

" 'Section 3. Any mutual life insurance company may acquire, own, or maintain a principal office, by and with the written consent of the insurance commissioner, in any state in which said company is admitted to do business, and may provide that the meetings of its board of directors, or governing body, may be held at said principal office, and all business transacted at said principal office shall be as valid in all respects as if the meetings of the board of directors, or governing body, were held in this state.'

"Defendant shows that acting under said provisions of the insurance law of Mississippi, on August 9, 1926, the National Council of the Columbian Mutual Life Assurance Society unanimously adopted resolutions to amend the society's articles of incorporation so as to convert the society into a mutual life and disability company. Defendant shows that under said amendment to the society's articles of incorporation, acting under the above set out laws of the State of Mississippi, it was provided that in lieu of the National Council set up under the constitution and by-laws of the Columbian Mutual Life Assurance Society, the new governing body should be known as the Board of Directors. Section 5 of the amendment to the articles of incorporation provided: 'While the inherent powers of the corporation are vested in the members thereof, the immediate conduct and control of the affairs of the corporation and its business shall be vested in a Board of Directors to consist of 25 members, or of such number thereof as may hereafter be designated by the by-laws of the corporation.'

"Section 6 provided: 'The officers of the Company shall consist of a president, first and second vice presidents, secretary and treasurer and such other officers as the Board of Directors may determine, all of which shall be elected by the Board of Directors at its first meeting in 1928.'

"Section 7 provided:

" 'The original officers and organization Board of Directors shall consist of the following officers and members of the corporation, who shall immediately, upon the approval and filing of this amendment to the articles of incorporation, function as the officers and Board of Directors of the corporation, with full power to adopt, by a majority vote thereof, by-laws for the conduct, control and direction of the affairs and business of the corporation, subject only to the following limitations: The by-laws adopted or amended by said original Board of Directors shall remain of full force until altered, amended or repealed by the first regular annual meeting of the members of the corporation, which shall convene on the third Wednesday in December, 1927, which meeting shall have the right by majority vote, to alter, amend or repeal said by-laws. The following named persons shall constitute the original officers until their successors shall be elected and qualify: * * *.'

" 'In case either of the above named persons shall decline to serve or prove to be ineligible, or any vacancy shall be created by the death or resignation of any director, or from any other cause, the vacancy or vacancies may be filled by the remaining directors.'

"Section 8 provided: 'The original Board of Directors shall have the power to create any boards or committees, establish and put in execution such rules, regulations, ordinances and by-laws as they may deem necessary for the welfare of the corporation; prescribe the duties and powers, limit the term of office and fix the compensation of all officers and members of the Board of Directors and other boards and committees of the corporation.'

"Defendant shows that among the by-laws adopted after the creation of the Columbian Mutual Life Insurance Company was the following: 'Section 13. No rights, duties or obligations of members of the corporation, as determined by certificates or covenants issued prior to the approval and filing of this amendment; or as determined by the constitution of the Columbian Mutual Life Assurance Society prior to said date, shall be affected by this amendment to the articles of incorporation, but, subsequent to its approval and filing, no contracts or certificates of fraternal benefit insurance shall be written by the corporation, and all of its insurance contracts shall be written as mutual life or disability insurance contracts and determined by the laws relating to mutual life or disability insurance companies.'

"Section 62 of the new by-laws provided as follows: 'The constitution and by-laws heretofore in force are hereby repealed except as applicable to and part of all contracts of insurance heretofore issued by the corporation as a fraternal benefit society and now outstanding.'

"Defendant, therefore, shows that as to those members of the Columbian Mutual Life Assurance Society, including those originally with the Eminent Household of Columbian Woodmen, who retained their covenants of insurance issued prior to change of the association into a mutual life and disability company, all of the provisions, statutes, with reference to fraternal benefit societies, the constitution and by-laws of the fraternal benefit society, remained in force and effect, but that instead of the association being operated by a National Council, its affairs were directed by a new body known as the Board of Directors. Fraternal covenant holders, however, continued to be expressly liable for any assessment that the new Board of Directors should determine from time to time.

"The fact is, the fraternal members, of which plaintiff is one, had decided that it was manifestly to their best interest to convert into a mutual company. The Columbian Mutual Life Assurance Society's officers and other members really drafted and sponsored the amendment to the mutual insurance statutes of the State of Mississippi, being Chapter 191 of the Acts of 1924, so that it would be legally possible for it to convert into a mutual life and disability company. Among the reasons which induced this course of action on the part of fraternal members were the impending danger that the society would, sooner or later, be compelled to pay premiums and other taxes; the failure of the members of the society to keep up the lodge system; the high mortality on the fraternal covenants; the difficulty in securing new members and the fact that competition with non-assessable companies (old line companies) was keen and difficult to deal with. For these and other reasons, the fraternal members concluded that their salvation lay in the scheme or plan of converting into a mutual company, whereby mutual contracts would be sold and is-

sued, as provided in Section 3 of the new by-laws, with 'fixed premiums', and which should not be 'subject to assessment or payments beyond these stated in the contract itself'; that this would enable the company to secure a better class of business at higher premiums and, perhaps, the necessity for future increased assessments against them, or their covenants would be obviated or greatly lessened and, for that reason, complainants and other holders declined or refused to exchange for new policies, which would have been on the basis of fixed premiums and not subject to assessment.

"Defendant further shows that while it was operating as the Columbian Mutual Life Assurance Society, it moved its executive offices and principal place of business to Memphis, Tennessee. Prior to its removal from Atlanta to Memphis, it had been practically decided by the members of the society to purchase a site and erect in the city of Memphis an expensive, outstanding office building. A leasehold on certain property was secured and a building to be known as Columbian Mutual Tower was constructed, being completed in the year 1924, two years before the society was converted into the present mutual company. The leasehold and building were carried on the company's books on and prior to March 16, 1937, at $1,525,000.00. Money representing reserve on fraternal covenants or certificates was invested in this project and should have earned, since the building was completed and occupied, at least 4% per annum interest net on the investment. This it has never done. On the contrary, this investment has cost the company a large sum of money, causing the company management and insurance departments great and profound concern. At the departmental examination of the company, which was closed as of March 16, 1937, held by and for the insurance departments of the State of Mississippi, the State of Tennessee and the State of Alabama, the whole matter, with respect to said fraternal investment and everything else of importance relative to the company's condition, was reviewed, analyzed and carefully weighed. The Honorable John Sharpe Williams, III, the Honorable James M. McCormack and the Honorable Frank N. Julian, high public officials in their respective states, charged with the duties and responsibilities of running their departments, with the right and power to visit,

examine, to regulate and to supervise this company and grant or refuse to grant it a license, acting on all the information before them and in their minds and on the advice of experts in insurance accounting and an expert actuary of outstanding ability, reached a very definite conclusion with respect to just what should be done for the company in order to place it upon a sound financial basis, so that its perpetuity might be assured and all persons concerned, benefited and protected.

"The finding and conclusion of the Insurance Commissioner of the State of Mississippi, defendant's home State, and under whose laws it was incorporated and owed its existence, was fully concurred in by the Commissioner of Insurance and Banking of the State of Tennessee and by the Superintendent of Insurance of the State of Alabama, and the Attorney General of the State of Mississippi, and there expressed in a written communication from the Hon. John Sharpe Williams, III, as follows:

'To the President and Members of the Board of Directors of the Columbian Mutual Life Insurance Company, Memphis, Tennessee:

"'In view of the facts which were developed by the recent examination of your company and all the circumstances and conditions with which I am familiar, it is my finding and conclusion that it is now necessary for the Board of Directors of your company to immediately make an assessment similar to policy loans, to be designated as a lien equal to 100% of the life reserve, less indebtedness or net equity of fraternal covenants, as of March 16, 1937, to be on the basis of outstanding covenants, plus a deficiency reserve and for any excess value allowed as a non-forfeiture option.

"'It is my opinion and the opinion of the Attorney General of the State of Mississippi that this assessment should be confined to the fraternal covenants.

"'Unless this assessment is made immediately, there is no feasible plan that I can suggest or set up, whereby the company can hope to avoid liquidation and receivership.

"'My finding and conclusion are fully concurred in by the Commissioner of Insurance and Banking of the State of Tennessee, Superintendent of Insurance of the

State of Alabama and by the Attorney General of the State of Mississippi.'

"Based on this report, the Board of Directors of the defendant, on March 16, 1937, adopted the following resolution:

" 'Whereas, this Company has operated for more than 32 years as a fraternal and as a purely mutual old line Life Insurance Company, owned, operated and controlled by its policy-holders, known as members, during which period it has paid to its policy holders and their beneficiaries more than $12,000,000.00; and

" 'Whereas, the admitted assets of the Company include its 22-story home office building, known as the Columbian Mutual Tower, situated in the city of Memphis, Tennessee, constituting a material part of the assets of the Company in which the outstanding reserved on various covenants and policies are invested; and

" 'Whereas, during the past several years an unprecedented economic depression throughout the United States has had a devastating effect upon the market and current value of all investments made by financial institutions throughout the country, including banks and life insurance companies, and particularly has substantially reduced the current market value of real estate and has also greatly reduced the rentals therefrom so that, in many instances, by present day appraisals of real estate, the immediate value if considerably less than its former admitted value; and

" 'Whereas, the origin and primary cause of the existing impairment or deficiency in assets was with the fraternal benefit societies, due particularly to the fact that the home office building has not only been a great expense, but has failed to produce a return sufficient to maintain the interest required on reserves; and

" 'Whereas, the funds heretofore collected and now being collected from fraternal covenant-holders are insufficient to pay the liabilities thereon, including mortuary and disability funds and expenses and maintain a fund sufficient to meet accrued and future liabilities and reserves required to maintain the percentage of solvency provided by the laws of the State of Mississippi; and

" 'Whereas, the Insurance Commissioner of the State of Mississippi has recently made or caused to be made a revaluation of the business, assets and liabilities of the Company, including said home office building, and such revaluation has indicated an impairment of approximately $1,800,000.-00; and

" 'Whereas, in order to enable the Company to continue to operate in a successful manner and serve the purpose for which it was organized, the Insurance Commissioner of the State of Mississippi has found and so ordered that an assessment shall be made and a lien placed therefor on and against all covenants issued by the fraternal benefit societies, to-wit: Eminent Household of Columbian Woodmen, Columbian Woodmen of Mississippi and Columbian Mutual Life Assurance Society, prior to the date of the conversion into the present mutual company, which occurred on the 9th day of August, 1926, said assessment to be in addition to any existing indebtedness on such covenants.

" 'Therefore, be it resolved that there is hereby imposed as of March 16, 1937, on each said covenant, in addition to any existing indebtedness on such covenants, an assessment similar to a policy-loan, which is designated as a lien equal to 100% of the life reserve, less indebtedness, or the net equity of said covenants, as of March 16, 1937, at the rate of 5% per annum, compounded annually, and shall be set up as an asset of the Company.

" 'Be it further resolved that, on and after March 16, 1937, the aforesaid lien and interest thereon shall be deducted from any claim or settlement under any covenant on which a lien exists.'

"That the effect of said resolution was to and did make an assessment against the covenant held by plaintiff for the full amount of the cash surrender or reserve, value of said covenant as of March 16, 1937, the amount of said assessment being as aforesaid the sum of $918.69, with 5% per annum, interest compounded annually from March 16, 1937, and therefore there was and is no cash surrender value available in response to the request of plaintiff and that plaintiff, under the facts hereinabove alleged and under the law applicable thereto, is not entitled to recover any judgment against defendant."

A supplemental answer was filed by the defendant in which it set out the following:

"Further answering plaintiff's demands, defendant shows that at the time the Columbian Mutual Assurance Society converted into the mutual company of the Columbian Mutual Life Insurance Company, as has been alleged, in its original an-

swer, there existed at that time certain statutes of the State of Mississippi, under which defendant was chartered and under whose laws said conversion was made, governing mutual life insurance companies and particularly Sections 5281, 5283 and 5284 of the Mississippi Code of 1930, which are as follows:

" '5281. *Premiums—restrictions as to.—* The maximum premium payable by any member shall be expressed in the policy or in the application for the insurance. Such maximum premium may be a cash premium and an additional contingent premium not less than the cash premium, or may be solely a cash premium. No policy shall be issued for a cash premium without an additional contingent premium unless the company has a surplus which is not less in amount than the capital stock required of domestic stock insurance companies transacting the same kind of insurance.'

" '5283. *Reserves and unearned premiums.* —Such company shall maintain unearned premium and other reserves separately for each kind of insurance, upon the same basis as that required of domestic stock insurance companies transacting the same kind of insurance; provided, that any reserve for losses or claims based upon the premium income shall be computed upon the net premium after deducting any so-called dividend or premium returned or credited to the member.'

" '5284. *Deficiency in assets—assessment for.—*Such company not possessed of assets at least equal to the unearned premium reserve and other liabilities, shall make an assessment upon its members liable to assessment to provide for such deficiency, such assessment to be against each such member in proportion to such liability as expressed in his policy; provided, the commissioner may, by written order, relieve the company from an assessment or other proceedings to restore such assets during the time fixed in such order.'

"That, therefore, the lien and assessment, as aforesaid, and as alleged in the original answer as having been made on the policy herein sued upon in the full amount of the cash surrender value thereof as existing March 17, 1937, was in accordance with the alleged contract, the constitution and by-laws and authorized and was legal and binding by virtue of said contract, constitution and by-laws, and by the laws of not only the State of Louisiana, but of the State of Georgia wherein said Eminent

Household of Columbian Woodmen was chartered, as well as under the laws of the State of Mississippi, under which the Columbian Mutual Life Assurance Society was incorporated and under whose laws the conversion into a mutual company was made, which laws prescribe the respective rights of the covenant holders and the company and their obligations.

"Defendant further alleges and insists that the foregoing statute, No. 5284 of the Mississippi Code of 1930 is applicable and that it clearly shows the Legislature intended, or its intent was to provide for the assessment in a mutual company of covenants which were assessable on their face and by their own provisions when read in connection with the fraternal laws, the application for membership and the covenants and constitution and by-laws of the fraternal benefit societies.

"That the Insurance Commissioner for the State of Mississippi, the state in which defendant is domiciled had the power and authority to order the assessment made against the alleged covenant herein sued on and did actually order said assessment made, which order was concurred in by the Commissioner of Insurance and Banking of the State of Tennessee, wherein defendant maintains its office and transacts its business, and his said action cannot be collaterally attacked or reviewed in this collateral proceedings in which the said Insurance Commissioner of the State of Mississippi is not made a party, but that whatever right, if any petitioner has, it being denied that he has such right, would have been a direct action to annul and set aside and to have decreed null and void the order of the said authority directing and commanding the making of said assessment and the levying of said lien against his covenant."

In a second supplemental answer, defendant alleged:

"Now, in the alternative and event and only in the event and alternative, the court should hold that the aforesaid lien and assessment made in accordance with the constitution, by-laws, rules and regulations and as set forth in said original and amended answer heretofore, against the plaintiff herein and as against his said covenant and as a lien thereon, is not in fact a lien against said covenant, then and in that event and alternative, defendants show that the said plaintiff is legally and justly indebted unto and owes defendant the

amount of the aforesaid assessment, namely, $918.69, with 5% per annum compound interest thereon from March 16, 1937, or the sum of $947.01, principal and interest on the date as of the filing of this suit, which amount is in excess of the claim made by plaintiff against defendant and that therefore, in said alternative, the amount claimed by plaintiff of defendant if the court should hold same has any merit, foundation or existence in fact, all of which is denied, has been compensated, offset and extinguished for the above reasons and for the reasons stated in said original and amended answer and that therefore, in said alternative and in no event is plaintiff due or entitled to recover any sum or amount against defendant whatsoever."

On these issues the case was tried and the lower court rejected plaintiff's demands. A new trial was applied for and granted. Over the objection of plaintiff after a new trial was granted, defendant filed another supplemental answer in which it alleged:

"Defendant shows that following the adoption of said resolution, as alleged in paragraph 25 of its original answer and assessment made in accordance therewith, there was filed in the Chancery Court, Shelby County, Tennessee, said Court being a Court of equity and having jurisdiction over this defendant, a bill brought by Walter D. Garland et al, as holders of covenants of insurance, on behalf of themselves and all other holders similarly situated, including petitioner herein, Harvey Fleming Lewis, seeking to have said assessment and lien held illegal, null and void and of no effect and as not binding on the holders of said insurance covenants and also seeking injunction, receiver and liquidation of this defendant.

"To this bill defendant filed its answer setting forth the facts above alleged and as presented in its original and supplemental answers, and setting forth that said assessment and lien were legal and fully authorized by the terms and provisions of said fraternal covenants of insurance, the by-laws, rules and regulations and constitution thereof. Said answer presented an issue as to the validity or invalidity of said assessments and liens as affecting all holders of covenants of insurance issued by the fraternal societies. Defendant shows that said bill, being a class bill, has fully bound said petitioner, Harvey F. Lewis, upon the issues therein presented, which clearly made the issue which is the only issue involved in the present suit as if said Harvey F. Lewis were himself named as a party plaintiff to said bill and suit.

"That said bill and answer thereto and the said suit having come on for trial to be heard and was heard before the Honorable L. D. Bejach, after a full hearing upon the facts and the law, his Honor, L. D. Bejach, rendered a full decree and judgment on the issues as therein presented and as shown by and determined in the said final judgment and decree, a certified copy of which is attached hereto and made a part hereof, with the same force and effect as if written in full herein and wherein it was specially held, determined and decreed that,

" 'It is therefore ordered, adjudged and decreed by the Court that the aforesaid assessment made by defendant's Board of Directors on March 16, 1937, by the adoption of the resolution filed herein as exhibit to complainant's original bill on or upon and against all covenants issued by the Eminent Household of Columbian Woodmen, the Columbian Woodmen of Mississippi and the Columbian Mutual Life Assurance Society prior to August 9, 1926, in an amount equal to 100% of the life reserve, less indebtedness or the net equity of said covenants as of March 16, 1937, was proper, legal and binding upon complainants and intervening petitioners; and is binding on all others similarly situated and their respective covenants or certificates of insurance, so far as the questions presented on this record are concerned.

" 'It is further ordered, adjudged and decreed by the Court that complainants and intervening petitioners are not entitled, on the merits of this cause, to recover any relief or to have an adjudication of this Court in their favor on any of the matters and things set forth in their pleadings and that their original bill, as amended, and the petitions filed herein should be and the same are hereby dismissed, with prejudice, at the cost of said complainants and petitioners and their sureties on their prosecution bonds, for which let execution issue;' which quotation, however, is without limitation as the entire decree attached hereto and made a part hereof is as aforesaid stated specially pleaded in full as if copied in its entirety herein.

"That subsequent to said trial and the rendition of said judgment, the plaintiffs,

Walter D. Garland et al., took and perfected an appeal to the Supreme Court of the State of Tennessee from said judgment, as will be shown by certified copy of the opinion, decree and judgment duly certified attached hereto and made a part hereof and thereby all the issues in this present case before the Court, the facts and the law have been finally by a final and definitive judgment determined, decreed and adjudicated and such a suit, being a class suit, having been brought for and on behalf and in the interest of all the covenant holders of the fraternal societies leading up to the incorporation of the Columbian Mutual Life Insurance Company and in the interest of the petitioner herein and, therefore, is binding upon him and has the force and effect of res judicata and of the thing already adjudged, and such final and definitive judgment is absolutely binding and controlling and a determination of the issues involved in the present suit against the defendant, and defendant specially pleads said decree and judgment as such final determination and as res judicata.

"That for the reasons hereinabove set forth and as contained in its original and supplemental answers, under Article 4, Section 1 of the United States Constitution, U.S.C.A. Const. Art. 4, Section 1, provides: 'Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State.' The said judgment in the Garland case, as rendered by the Supreme Court of Tennessee, in affirming the judgment and findings of facts and in the determination of the issues as presented in said suit, which contains the only issue involved in the present suit before the Court, is conclusive and binding and has the force and effect of res judicata and the Court hereof should therefore accord full faith and credit to the judicial proceedings and judgment of the courts of the State of Tennessee, as required by the constitutional provision hereinabove set forth.

"That, therefore, and for all the reasons urged and in the alternative, defendant specially pleads and urges in bar of plaintiff's right claim, demand and suit, or any right to recover herein res judicata."

It also filed a special plea of res judicata based upon the facts alleged in this supplemental answer.

The lower court considered the plea of res judicata, but reinstated its former judgment. From that judgment plaintiff is prosecuting this appeal.

On trial of the case below, the following stipulation was entered into by plaintiff and defendant:

"It is agreed between plaintiff and defendant, through their undersigned counsel, that the following documents: D1, (5 sheets), consisting of application for charter of the Eminent Household of Columbian Woodmen, together with the certificate of incorporation issued by Phillip Cook, Secretary of State of the State of Georgia, dated July 13, 1906; D2, the charter, articles of incorporation and constitution of the Eminent Household of Columbian Woodmen as certified November 20, 1937, by G. G. Hart, Secretary of Columbian Mutual Life Insurance Company; D3, (4 sheets) the petition and application of the Eminent Household of Columbian Woodmen for amendment of articles of incorporation, together with resolution certified November, 1904, by C. H. Belmont, Eminent Clerk, together with insurance charter signed by Phillip Cook, Secretary of State of the State of Georgia, August 24, 1903; D4 (6 sheets) the petition and application of the Eminent Household of Columbian Woodmen for amendment of charter, together with resolution authorizing the same and certificate issued by Phillip Cook, Secretary of State of the State of Georgia, dated June 5, 1909, issued pursuant to said petition; D5 (2 sheets), articles of incorporation of the Columbian Woodmen; D6 (3 sheets) amended articles of incorporation of Columbian Woodmen, together with certificate of amended charter issued by the Insurance Commissioner, State of Mississippi, August 3, 1921; D7, certificate by Phillip Cook, Secretary of the State of Georgia, dated June 5, 1909, showing restoration of charter as originally granted on December 15, 1904, of the Eminent Household of Columbian Woodmen; D8, (2 sheets) certificate of incorporation of the Columbian Woodmen signed by the Insurance Commissioner of the State of Mississippi, April 12, 1919; D9 (8 sheets) agreement of merger, consolidation and transfer of the membership and funds of the Eminent Household of Columbian Woodmen, a corporation under the laws of the State of Georgia with and to the membership and funds of

Columbian Woodmen, a corporation under the laws of Mississippi; D10, charter, articles of incorporation and constitution of the Columbian Mutual Life Assurance Society as certified November 20, 1937, by G. G. Hart, Secretary, Columbian Mutual Life Insurance Company; D11, by-laws of the Columbian Mutual Life Insurance Company, adopted August 10, 1926, as certified November 20, 1937, by G. G. Hart, Secretary; D12, by-laws of the Columbian Mutual Life Insurance Company, adopted January 1, 1936, as amended January 6, 1937, and as certified on November 20, 1937, by G. G. Hart, Secretary; D13, (8 sheets) amendments to the articles of incorporation and charter of the Columbian Mutual Life Assurance Society, adopted August 9, 1926, as certified March 10, 1932, by Geo. D. Riley, Insurance Commissioner, State of Mississippi; be offered, introduced, filed, considered and acted upon as evidence on the trial of this case, the genuineness of said documents is hereby admitted and all objections to the introduction of said documents are waived other than the right of the plaintiff to object to any, or all, of said documents, or any portion thereof, on the grounds of relevancy and materiality only.

"It is further admitted for the purpose of this trial, submission and decision on this cause that each and every allegation of fact as set forth in defendant's answer and amended answer is true and correct and that the laws of the states of Georgia and Mississippi and other states are and were as alleged in said answers of defendant.

"That by an audit and otherwise, investigation into the matters and affairs and business of the defendant by the Insurance Commissioner of the State of Mississippi and by the respective officials of Alabama and Tennessee, having authority and jurisdiction, it was determined that there was a deficiency in assets of approximately $1,800,000.00 under the liabilities of the company, the Columbian Mutual Life Insurance Company, and that on account of said deficiency, the Insurance Commissioner of Mississippi ordered the levying of the assessment and lien against the fraternal covenants and the holders of fraternal covenants only, one of which on which a levy and lien was placed being that of the plaintiff, H. F. Lewis, and the covenant herein sued upon; that no levy or assessment was made upon any of the policies issued by the Columbian Mutual Insurance Company since and including August 9, 1926.

"That the levy of 100% of the cash surrender value or life reserve on each and every covenant issued by the fraternal organizations prior to August 9, 1926, was necessary, or required, to remove said deficiency in assets and that the levy upon the particular covenant herein sued upon and the lien placed upon said covenant was and is for the full 100% of the cash surrender, or life reserve, of said covenant as of the date of March 16, 1937, and that in accordance with said levy and lien, if legal and valid on the date said suit was filed, said lien and levy equaled any legal cash surrender value or life reserve of said covenant.

"Plaintiff makes the above and foregoing admissions as to said facts and as alleged and set forth in defendant's answers with full right to urge all objections as to relevancy and materiality of any or all of said evidence, or any part thereof, but not otherwise.

"It is further admitted that the plaintiff, H. F. Lewis, received due notice through the mail by and through a copy of the resolution and order directing the assessment of such an assessment and that said covenant was allowed to lapse, but in due course and due time, but since the receipt of said notice of said assessment, the said H. F. Lewis has made application for and has taken steps to and has obtained the reinstatement of said covenant, which reinstatement was duly accepted by the company prior to filing suit and plaintiff retained all the original benefits and rights under the terms of the contract to the same extent as if there had been no lapse.

"It is further agreed and understood that by this admission of fact plaintiff does not admit to be bound in any way by said alleged assessment and lien through said admission of fact, but reserves all rights to urge any and all grounds, reasons and objections to the legality of said lien and assessment, resolution or other actions authorizing or pertaining to same.

"That this agreement is being made to avoid the necessity of taking testimony with reference to trial of this case.

"It is further agreed that the covenant sued upon is the original covenant as is-

sued by the Eminent Household of Columbian Woodmen, a fraternal benefit society, to the said H. F. Lewis and that on the date of the filing of this suit, namely, October 29, 1937, the cash surrender value or life reserve of plaintiff's covenant herein sued upon in the absence of said levy and assessment lien would have been the sum of $958.98. This statement as to the amount is made subject to the objection of the defendant as being inadmissible to contradict, alter, vary or to enlarge the pleadings to the prejudice of defendant and in favor of plaintiff.

"It is also further agreed between plaintiff and defendant that the following additional documents: D14, resolution of annual membership meeting of the Columbian Mutual Life Insurance Company held and adopted January 5, 1938; D15, order of the Insurance Commissioner of the State of Mississippi relative to the special assessment; and D16, resolution of Board of Directors levying said assessment and lien; be offered, introduced, filed, considered and acted upon as evidence on the trial of this case, the genuineness of said documents is hereby admitted and all objections to any or all of said documents is hereby admitted and all objections to the introduction of said documents are waived other than the right of the plaintiff to object to any or all of said documents, or any portions thereof, on the grounds of relevancy and materiality only."

In support of the plea of res judicata, defendant offered in evidence a certified copy of the opinion of the Court in the case of Walter D. Garland et al. v. Columbian Mutual Life Insurance Company, rendered by the Supreme Court of Tennessee at its December term, 1937.[1]

The only oral testimony offered in the case was that of plaintiff who testified that he was never requested to give his consent to the assessment levied against his policy and that he did not consent to it being done. He admitted that he was given notice that the assessment had been made.

The plea of res judicata is seriously and forcibly urged by counsel for defendant and we are of the opinion to dispose of it first.

During the pendency of this appeal here, the case of Bryant v. Eminent Household of Columbian Woodmen, 8 S.E.2d 438, was pending in the Court of Appeals of Georgia; and that the identical question of res judicata, based upon the decision in Walter D. Garland et al. v. Columbian Mutual Life Insurance Company, supra, decided by the Tennessee court, was before that court. At the request of interested parties and for the further reason that the State of Georgia was the original domicile of the Eminent Household of Columbian Woodmen, we held up a decision in the case at bar until we could secure a copy of the decision of the Georgia Court of Appeals, which was rendered March 14, 1940.

In the case at bar, plaintiff was not a party to the suit of Garland et al. v. Columbian Mutual Life Insurance Company, supra, and unless he is bound by virtue of it being a class suit and said suit was decided in a state and by a court to which full faith and credit must be given by the courts of this state, under Article 4, Section 1 of the Constitution of the United States, he is not bound thereby.

■ As pointed out in the Georgia Court of Appeals decision, the domicile of defendant is Mississippi and not Tennessee and, as a condition precedent for an application of the full faith and credit provision of the United States Constitution, to be applicable to members of a class that might be affected by the judicial proceedings of another state, it must appear that such court had jurisdiction to bind the members of the class wherever located.

■ It is fundamental and so recognized by the courts of this state that the validity and obligation of a contract is a matter to be governed by the lex loci contractus. Therefore, in construing the powers granted to defendant, we must look to its charter and the laws of the state under which it was granted. The fact that its offices are in Tennessee do not take away from the courts in Mississippi the right to construe and decide questions concerning its charter, by-laws and constitution. Until this has been done, a decision of no other state than Mississippi is entitled to be given full faith and credit in the courts of this state as against plaintiff, who was not a party to such action in said other state. Hartford Life Insurance Company v. Eliza Ibs, 237 U.S. 662, 35 S.Ct. 692, 59 L.Ed. 1165, L.R.A.1916A, 765; Selig v. Hamilton, 234 U.S. 652, 34 S.Ct. 926, 58 L.Ed. 1518, Ann.Cas.1917A, 104; Mutual Life Insurance Company v. Harris,

---

[1] No opinion for publication.

97 U.S. 331, 336, 24 L.Ed. 959; Condon v. Mutual Reserve Fund Life Ass'n, 89 Md. 99, 42 A. 944, 44 L.R.A. 149, 73 Am.St.Rep. 169; Supreme Council Royal Arcanum v. Green, 237 U.S. 531, 542, 35 S.Ct. 724, 59 L.Ed. 1089, 1100, L.R.A.1916A, 771; Modern Woodmen of America v. Mixer, 267 U.S. 544, 45 S.Ct. 389, 69 L.Ed. 783, 41 A.L.R. 1384; Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; Sovereign Camp v. Bolin, 305 U.S. 66, 59 S.Ct. 35, 83 L.Ed. 45, 119 A.L.R. 478.

We therefore find the plea of res judicata is without merit and it is overruled.

This brings us to the question of the legality of the assessment made against plaintiff and his certificate or covenant of insurance.

In the Tennessee and Georgia cases referred to above, the legality of the identical assessment was attacked and the courts of both states held the assessment to be legal and binding. While we are not bound by these decisions, they are very persuasive. When we consider the case from another angle, it would be an anomalous situation if we should find the assessment was not binding on a Louisiana covenant holder and the Tennessee and Georgia courts have held it was binding on the holders of like covenants in those states. However, this is not our reason for finding the assessment to be legal and binding on the plaintiff. The same facts to which the same law is to be applied are before us in the case at bar, as they were before the courts of Tennessee and Georgia in the two cases referred to, and we are convinced the reasons given for the decision in those cases are sound. In order that it might be shown that the same facts and contentions were made in those cases, we will quote in full the opinion in the Tennessee case, styled Walter D. Garland et al. v. Columbian Mutual Life Insurance Company, decided by the Supreme Court at its December term, 1937. It is as follows:

"In the year 1919, there was incorporated under the laws of the State of Mississippi a fraternal benefit society known as the Columbian Woodmen of Mississippi. In the year 1921, the name of the society was changed to the Columbian Mutual Life Assurance Society and there was merged therewith the Eminent Household of Columbian Woodmen of Georgia. The Columbian Mutual Life Assurance Society continued to operate as a fraternal benefit society under the laws of the State of Mississippi controlling such societies until the year 1926. A large number of covenants were issued by the several fraternal societies above named prior to August 9, 1926, and the holders of those fraternal covenants and certificates are scattered throughout the states of Mississippi, Louisiana, Tennessee and other states.

"On August 9, 1926, in accordance with the laws of the State of Mississippi, the supreme legislative and governing body of the Columbian Mutual Life Assurance Society, in lawful and regular convention, unanimously adopted a resolution authorizing and directing that an amendment be filed to its Articles of Incorporation, converting the Society from a fraternal benefit society into a mutual life and disability insurance company.

"Section 3 of the amendment to the charter provides: 'Amend the original and amended articles of incorporation by incorporating in the articles of incorporation of the Columbian Mutual Life Assurance Society, the provisions enumerated in this and the following sections.'

"Section 5 provides: 'While the inherent powers of the corporation are vested in the members thereof, the immediate conduct and control of the affairs of the corporation and its business shall be vested in a Board of Directors to consist of 25 members, or of such number thereof as may hereafter be designated by the by-laws of the corporation'.

"Section 13 provides: 'No rights, duties or obligations of members of the corporation, as determined by certificates or covenants issued prior to the approval and filing of this amendment, or as determined by the constitution of the Columbian Mutual Life Assurance Society prior to said date, shall be affected by this amendment to the articles of incorporation, but subsequent to its approval and filing, no contracts or certificates of fraternal benefit insurance shall be written by the corporation, and all of its insurance contracts shall be written as mutual life or disability insurance contracts and determined by the laws relating to mutual life or disability insurance companies.'

"The amendments were approved by the National Council of the Columbian Mutual Life Assurance Society and by the Insurance Commissioner of the State of Missis-

sippi. The first meeting of the members of the corporation, following the amendment of the charter, was held on December 21, 1927, at which meeting a set of by-laws were adopted to govern the conduct of the business of the corporation as a mutual company.

"Section 62 of the by-laws so adopted provides: .'The Constitution and By-laws heretofore in force is hereby repealed except as applicable to and part of all contracts of insurance heretofore issued by the corporation as a fraternal benefit society and now outstanding.'

"Section 61 of the by-laws provides, in substance, that the Board of Directors shall have the right to offer to the holders of all insurance contracts issued prior to the date of conversion of the status of the company, such options of exchange for new forms of policies upon such terms and conditions as may be deemed fair and equitable.

"Section 299 of the Constitution and by-laws of the Columbian Mutual Life Assurance Society provided: 'Section 299— *Withdrawal Equities.* The Executive Council may provide for withdrawal equities in any form of covenant upon which the Society is accumulating and maintaining a reserve not lower than the usual reserve computed by the American Experience Table, with 4% interest; may grant loans, paid-up and extended insurance according to the table of values prescribing same and the conditions therefor as adopted by the Executive Council.'

"Section 17 of the Constitution and by-laws of the Society, in part, provided: '*Powers and Authority.* The National Council * * * shall have power to provide for the levy and collection of such premiums or installments and dues from its members as shall be necessary to pay all beneficiary claims and expenses of management, and to provide the required reserve and a reasonable surplus for the purpose, and shall have generally such powers and may perform such duties as it may deem wise for the welfare of the Society and to establish the rights and perpetuity of the Society without limitation within the scope of its powers and rights conferred by its articles of incorporation and charter.'

"Section 5252 of the Mississippi Code, found under Article 14, Fraternal Societies, is as follows: '* * * The laws of such society shall provide that if the stat-ed periodical contributions of the members are insufficient to pay all matured death and disability claims in full, and to provide for the creation and maintenance of the funds required by its laws, additional, increased or extra rates of contribution shall be collected from the members to meet such deficiency; and such laws may provide that, upon the written application or consent of the member, his certificate may be charged with its proportion of any deficiency disclosed by valuation with interest not exceeding five per centum per annum.'

"Following the adoption of the charter amendments, the Company issued no further fraternal covenants, but issued only policies with fixed, level premiums.

"During March, 1937, the Insurance Commissioners of Mississippi, Alabama and Tennessee conducted an examination of the records of the Company and found a deficit of $1,886,000 of assets under liabilities. The Insurance Commissioner of Mississippi thereafter delivered to the president and board of directors a written order as follows:

" 'To the President and Members of the Board of Directors of the Columbian Mutual Life Insurance Company, Memphis, Tennessee:

" 'In view of the facts which were developed by the recent examination of your Company and all the circumstances and conditions with which I am familiar, it is my finding and conclusion that it is now necessary for the Board of Directors of your Company to immediately make an assessment similar to policy-loans, to be designated as a lien equal to 100% of the life reserve less indebtedness or net equity of fraternal covenants, as of March 16, 1937, to be on the basis of outstanding covenants, plus deficiency reserve and for any excess value allowed as a nonforfeiture option.

" 'It is my opinion and the opinion of the Attorney General of the State of Mississippi that this assessment should be confined to the fraternal covenants.

" 'Unless this assessment is made immediately, there is no feasible plan that I can suggest or set up, whereby the Company can hope to avoid liquidation and receivership.

" 'My finding and conclusion are concurred in by the Commissioner of Insurance and Banking of the State of Tennes-

see, by the Superintendent of Insurance of the State of Alabama and by the Attorney General of the State of Mississippi.'

"On March 16, 1937, in response to the order of the Insurance Commissioner of Mississippi, at a regular meeting of the Board of Directors of the Company, the following resolution (omitting the preamble) was adopted:

" 'Therefore be it resolved that there is hereby imposed, as of March 16, 1937, on each said covenant, in addition to any existing indebtedness on such covenants, an assessment similar to a policy-loan which is designated as a lien equal to 100% of the life reserve less indebtedness, or the net equity of said covenants, as of March 16, 1937, which shall be on the basis of outstanding covenants plus deficiency reserve and for any excess value allowed as a non-forfeiture option. Said lien shall bear interest from March 16, 1937, at the rate of 5% per annum, compounded annually, and shall be set up as an asset of the Company.

" 'Be it further resolved that, on and after March 16, 1937, the aforesaid lien and interest thereof shall be deducted from any claim or settlement under any covenant on which a lien exists.'

"The imposition of this assessment upon the fraternal covenants was sufficient, it is admitted, to wipe out the deficit of the Company and create a small surplus.

"Complainants are holders of fraternal covenants and by their bill herein challenge the validity of the assessment made under the resolution of March 16, 1937. The relief sought by the bill is as follows, omitting the prayer for process:

" '2. That an injunction issue, restraining the said defendant from disposing of any of the assets of the company and from entering into any further contracts of insurance and from paying further losses or benefits of any kind or character.

" '3. That a Receiver be appointed by this Court to take charge of and preserve the said business and all its assets.

" '4. That an accounting be had under the direction of this Court.

" '5. That said Receiver be ordered to liquidate the assets of the said defendant company and to distribute the same equitably among its policy-holders.

" '6. That the attempted resolutions of the Board of Directors of the defendant company be declared null and void and that it be ordered by this Court that no lien be imposed against the covenants of complainants and others similarly situated because thereof; and that all of the assets of the defendant company be declared a trust fund for the sole benefit of all of the policy-holders of the defendant company whether their covenants were issued by the Eminent Household of Columbian Woodmen, the Columbian Woodmen of Mississippi, the Columbian Mutual Life Assurance Society or the Columbian Mutual Life Insurance Company, as their interests may appear.

" '7. That upon final liquidation of the assets of said company, complainants may have a decree for all their interests in said assets or in the proceeds thereof.

" '8. That if complainants are mistaken as to their rights to a receivership and a liquidation of the assets of the defendant company and a distribution thereof, that the directors of the defendant company be ordered and directed to remove against the complainants' covenants and against the covenants of those similarly situated the lien attempted to be imposed by the resolution of March 16, 1937, and that the defendant by decree of this Court be compelled specifically to perform said contracts by restoring to complainants and others similarly situated all loan and nonforfeiture values, etc., as provided in said covenants.

" '9. That defendant be ordered and required to bring into Court all books of account, records, etc., of such company which would reflect in any way the financial status and condition of the defendant company from and including the year 1926 to date.

" '10. That complainants have such other, further and general relief to which they may be entitled in the premises.'

"The company made answer and denied complainants were entitled to the relief sought. The chancellor, on final hearing, the facts not being in controversy, found in favor of the company and dismissed the bill with prejudice. Complainants have appealed to this Court and assigned numerous errors.

"It is contended by complainants that the fraternal society ceased to have a legal existence by virtue of the charter amendment and by-laws adopted thereunder, and, pursuant to Section 5275 of the Code (authorizing fraternal societies to convert into mutual life and disability insurance com-

panies) a new corporation came into existence, governed by Article 15, Chapter 127, Mississippi Code of 1930. Such new corporation, having no power to contract contrary to Section 5281, which provides: *'Premiums—restrictions as to.*—The maximum premium payable by any member shall be expressed in the policy or in the application for the insurance. Such maximum premium may be a cash premium and an additional contingent premium not less than the cash premium, or may be solely a cash premium.'

"The charter amendments did not create a new corporation. Polk v. Mutual Reserve Fund Life Ass'n, 207 U.S. 310, 28 S.Ct. 65, 52 L.Ed. 222; Wall v. Bankers Life Company, 208 Iowa 1053, 223 N.W. 257. The legal entity of the corporation remained the same, but its powers were altered so that thereafter it could only operate as a mutual company. Section 13 of the amendment, hereinbefore set forth in full, specifically provides that subsequent to the approval and filing of the amendment, 'no contracts or certificates of fraternal benefit insurance shall be written by the corporation and all of its insurance contracts shall be written as mutual life or disability insurance contracts and determined by the laws relating to mutual or disability insurance companies.' The contracts outstanding in the hands of fraternal members were not changed to mutual policies with fixed premiums. Under the express language of section 13 of the amendment 'no rights, duties or obligations of members of the corporation, as determined by certificates or covenants issued prior to the approval and filing of this amendment, or as determined by the constitution of the Columbian Mutual Life Assurance Society prior to said date' were to be affected by the amendment. Section 5281 of the Code is prospective in its operation and, in its requirement that 'maximum premium payable by any member shall be expressed in the policy', could not possibly have application to fraternal contracts, without fixed premiums, in existence at the time of the amendment.

"The validity of the amendment and of the by-laws is not questioned. Complainants for ten years have continued to carry their contracts with the company, without question, as fraternal covenants, and neither they nor any other covenant holder, so far as this record discloses, ever before insisted that they were in fact holders of

policies of insurance with fixed, level premiums and subject alone to statutes applicable to mutual companies.

"The amendment to the charter was instigated and brought about by the fraternal members. The certificate of the Insurance Commissioner to the amendment recites that 'all of the District Councils, State or Division Grand Lodges, composed of delegates from branch councils or subordinate lodges of the Columbian Mutual Life Assurance Society have by more than a two-thirds vote of each of said councils, state or division grand lodges, already authorized or instructed the National Council to change or convert said Society into a Mutual Life and Disability Company'. Pursuant to these instructions, the National Council of the Society unanimously requested and adopted the amendment. The fraternal members, the owners of the Society, invited, by the amendment, persons to come in and procure mutual insurance under the terms of the amendment and statutes applicable to mutual companies, and, under the representation that the rights, duties and obligations of the fraternal members would remain unchanged and unaffected.

"It is contended that the National Council, the highest agency of the Society, alone had the power and authority, under the constitution and by-laws of the Society, to levy an assessment. Under section 5 of the amendment to the charter of the Society, hereinabove set out, it was provided, in substance, that while the inherent powers of the corporation are vested in the members, the immediate conduct and control of the affairs of the corporation and its business shall be vested in a Board of Directors. The by-laws adopted under the amended charter, by the members, repealed the constitution and by-laws theretofore in force, except as applicable to and part of the fraternal contracts outstanding. The powers of the old National Council, insofar as they affected the fraternal contracts, passed to the Board of Directors.

"The members of the Society obtained the amendment to its charter and adopted the new by-laws, as they had the legal right to do, and many annual meetings have been held since the date of the amendment and the adoption of the by-laws, and complainants cannot now complain that control of the corporation was shifted from the National Council to the Board of Directors.

"It is next contended that even if the fraternal contracts were unaffected by the amendment and by-laws, nevertheless the assessment was arbitrary, confiscatory, and destroyed vested rights.

"The Columbian Mutual Life Assurance Society, in 1922, moved its principal place of business to Memphis, Tennessee. Prior to this removal, it had been practically decided by the members of the Society to purchase or erect an outstanding office building in the city of Memphis. To this end, the Society negotiated a 99-year lease on certain property and began the erection of a 22-story building, known as the Columbian Mutual Tower. This building was completed in 1924, two years before the Society converted into a mutual company. The leasehold and building were carried on the company's books prior to March 16, 1937, at $1,525,000. Money representing reserve on fraternal covenants was invested in this project. It was contemplated that the building would at least earn 4% interest, net, on the investment. This it did not do. On the contrary, a loss of approximately $40,000 per year was suffered.

"The examination of the company, held by the Insurance Departments for the states of Mississippi, Tennessee and Alabama, was closed as of March 16, 1937. It was determined by the three Commissioners that the company's office building should be depreciated by a write-off of $925,000, and that additional reserves amounting to $600,000 should be set up and provided for. The result was the order addressed to the company, hereinbefore set out. The three Insurance Commissioners were officials in their respective rights, charged with the duties of running their departments, with the right and power to visit, examine, regulate and supervise this company and grant or refuse to grant it a license. The company, if it was to continue to operate as a going concern, had no other alternative than to obey the order. This it did.

"Complainants are not here seeking individual relief, but are suing as a class, seeking to avoid the assessment made by the Board of Directors pursuant to administrative findings made by the Insurance Commissioner of Mississippi and concurred in by the Insurance Commissioners of Tennessee and Alabama.

"Section 5284 of the Mississippi Code, Article 15, Mutual Companies, is as follows: 'Deficiency in assets—assessment for.—Such company not possessed of assets at least equal to the unearned premium reserve and other liabilities shall make an assessment upon its members liable to assessment to provide for such deficiency, such assessment to be against each such member in proportion to such liability as expressed in his policy; provided, the commissioner may, by written order, relieve the company from an assessment or other proceedings to restore such assets during the time fixed in such order.'

"This section immediately was binding upon all members. The holders of fraternal contracts were members, in fact, the original members. They were assessable under their contracts. All mutual policies were issued after August 9, 1926, with definite fixed premiums and were not liable to assessment. As a result of the amendment to the charter, the members to whom certificates had been issued prior thereto, continued to be liable for special assessment, whereas the members to whom policies were issued thereafter never undertook to pay any amount under their policies, except the fixed premiums stated therein.

"The amount of the assessment, under Section 5284, is limited only by the deficiency in assets. The amount of the assessment cannot be held unreasonable, for any lesser amount would not have satisfied the deficiency. To refuse to impose the assessment at all would have resulted in the cessation of business and receivership, with consequent disaster to the members, including complainants.

"It is argued for complainants that if Section 5281 of the Code, with reference to the requirement that maximum premiums be expressed in the policy, should have no application, then Section 5284, with reference to assessment for deficiency in assets, would have no application. As hereinbefore stated, Section 5281 has reference to mutual policies of insurance written after the conversion into a mutual company; but Section 5284 has immediate application upon the conversion being consummated, and all members, of whatever class, are subject to its terms.

"No attempt has been made by the company to reduce the amount of any fraternal contract to some lesser amount. The assessment was made upon the net reserve or cash surrender value of the contracts. If such a result ever happens, it must be brought about by the failure of

the member to pay the assessment. It is not shown that there is anything to prevent a member clearing his contract of the lien by paying the amount of his assessment.

"By reason of the deficit of $1,800,000 the reserve did not in fact exist, except as paper credits. As one court has said,—'no one can have a vested right in disaster'. However, the fraternal contracts did not create any vested rights in the fraternal members in or to the property of the organization as against the association itself. 19 Ruling Case Law 1267; White v. Woodmen of the World, 87 Utah, 477, 50 P.2d 422; Thomas v. Knights of Maccabees, 85 Wash. 665, 149 P. 7, L.R.A.1916A, 750, Ann.Cas.1917B, 804; United Order of Foresters v. Miller, 178 Wis. 299, 190 N.W. 197, 29 A.L.R. 1526; Shultz v. Brotherhood of Railroad Trainmen, 118 W.Va. 3, 188 S.E. 474. Complainants and other fraternal members had agreed, as members of the Society, that assessments could be levied. The National Council was the sole judge of the necessity of making an assessment and the amount thereof. As before pointed out, the fraternal members, by amendment to the charter and the new by-laws, passed the powers and authority of the National Council to the Board of Directors. The right of the Board to make the assessment existed as against the fraternal members, both under the reservations contained in the amendment and by-laws and under Section 5284 of the Code. The assessment made by the Board of Directors, on the order of the Insurance Commissioner of Mississippi, was violative of no contract rights of complainants. The power to make the assessment existing, the right to insure its collection logically followed. The fraternal contracts were neither altered nor impaired by the assessment or by making the same a lien on their reserves. All that was done was authorized by the fraternal members themselves when they provided by the constitution and by-laws of the Society, that assessments might be made, and by converting the Society into a mutual company with the power, under Section 5284, to levy assessments to cover deficiency in assets. The fraternal contracts being held under the reserved power of the corporation to levy assessments, it cannot be held that the exercise of the power altered or changed the contracts.

"It is true that a holder could not obtain a loan on his certificate or obtain its cash surrender value so long as the assessment made thereon remained unpaid. Until the holder paid the assessment, the company, of course, had a valid offset, to the amount of the assessment, against the loan and cash surrender value of the certificate.

"We have undertaken to give full faith and credit to the various statutes of the State of Mississippi applicable to the controversy here presented and to measure the rights and obligations of the respective parties thereby. After a careful consideration of the questions made by the assignments of error, we are constrained to overrule the same and hold the assessment complained of to be valid and not arbitrary or violative of vested rights of complainants, or violative of any statute of the State of Mississippi or of the Constitution of that State or of the Constitution of the United States.

"The decree of the chancellor is affirmed and complainants will pay the costs of the appeal."

■ According to the uniform fraternal statutes and their interpretation and construction by courts of last resort, it is unquestionably true that fraternal contracts cannot be considered in the commercial sense, but are only mutual promises of every member to pay the contract or certificates of every other member. There can be no vested right in any provision of the contract. No member or official can acquire the individual right to any vested or fixed apportionment of any part of the reserve or assets of the Society to the prejudice of other members, and if a deficiency between the assets and matured and tentative liabilities occurs, necessitating an additional assessment against its members, and the increased assessment is so great as to make the insurance unprofitable and prohibitive to the old members, that fact alone will not make the rate unreasonable or arbitrary, if the assessment is no more than experience has shown to meet the cost of the insurance at the attained age of such member. Whenever there is a deficit in the reserve, whether caused by too low rates or by depreciation in the reserve, consisting of real estate, makes little difference when the deficiency is there, as is admitted in this case. The only way it can be built up is by the method provided by law, which is by assessments of the members of the organization or society.

The laws or by-laws of the Society do not provide that assessments can only be

made by consent of its members. If this were true, it would be a futile law or by-law.

The Directors of the defendant organization had one of two alternatives, either to make assessments or to liquidate its affairs. The last would have been disastrous to all. If the association had been liquidated, many old persons who were past the insurable age would have been without insurance. The expense of liquidation would have consumed much of the assets and the covenant holders could only have hoped for a small part of the dues and assessments previously paid.

The facts of this case, as have been true of many others, prove that cheap insurance is generally expensive insurance in the long-run.

We are convinced that the judgment is correct and it is affirmed, with costs.